UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATI LEEAL, *et al.*,

    Plaintiffs,

v.

DITECH FINANCIAL LLC,

    Defendant.

Case No. 2:17-cv-10645
Hon. Matthew F. Leitman

_____/

**<u>OPINION AND ORDER (1) GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 49) AND (2) DENYING WITHOUT PREJUDICE DEFENDANT'S REQUEST FOR ATTORNEYS' FEES</u>**

Plaintiffs Mati and Malka Leeal defaulted on their home mortgage loan, so Defendant Ditech Financial LLC ("Ditech"), the Leeals' loan servicer, initiated foreclosure proceedings against them. In this action, the Leeals contend that Ditech may not foreclose on their mortgage because they (the Leeals) previously obtained a state-court default judgment in which the state court declared "void" the note secured by the mortgage. The Leeals insist that since the note secured by the mortgage was voided by the default judgment, the mortgage is no longer viable, and no foreclosure of the mortgage is permissible.

The problem for the Leeals is that they sued the wrong parties in the prior state-court action. Instead of suing the owner of the note and Ditech (which was the

1

servicer and holder of the mortgage at that time), the Leeals sued the former note owner and the prior mortgage servicer – neither of whom had any interest in the note or the mortgage at that time. Under settled law, the default judgment entered against those two uninterested parties does not extinguish the actual note owner's valid ownership interest in the note, does not bar the note owner from enforcing the note, and does not bar Ditech from foreclosing on the mortgage that secures the note.

For these reasons, and the others set forth below, the Court **GRANTS** Ditech's renewed motion for summary judgment.

# I

## A

On November 16, 2007, the Leeals took out a $301,000 mortgage loan from ABN AMRO Mortgage Group, Inc. ("ABN AMRO"). (*See* Ditech Corporate Litigation Representative Stewart Derrick Decl. ¶ 4, ECF No. 49-1, PageID.1161.) The loan was memorialized by a note that identified ABN AMRO as the lender (the "Note"), and the Note was secured by a mortgage (the "Mortgage").[1] (*See id.*; *see also* Note, ECF No. 49-1, PageID.1166–1168; Mortgage, ECF No. 49-1,

---

[1] A note is a promise to repay a loan. *See Flagstar Bank, FSB v. Fed. Ins. Co.*, No. 05-70950, 2006 WL 3343765, at *12 (E.D. Mich. 2006). A mortgage "is a lien on real property intended to secure performance or payment on" that promise. *Prime Fin. Servs. LLC v. Vinton*, 761 N.W.2d 694, 703 (Mich. Ct. App. 2008). A mortgage is considered "a contingent interest in real property," while "a note secured by a mortgage is itself personal property." *Id.*

2

PageID.1170–1178.) At the time of this transaction, ABN AMRO was an assumed name for CitiMortgage, Inc. ("CMI"). (*See* CMI Senior Recovery Analyst John James Decl. ¶¶ 4–5, ECF No. 49-2, PageID.1207.) Thus, CMI was the actual lender of the funds to the Leeals.

On December 1, 2007, the Federal National Mortgage Association ("Fannie Mae") purchased the Leeals' loan from CMI. (*See, e.g.*, Fannie Mae Assistant Vice President Erich Ludwig Decl. ¶¶ 4–5, ECF No. 49-3, PageID.1238.) Fannie Mae has owned the Leeal's loan ever since. (*See id.*)

In addition to being the original lender, CMI was the servicer for the Leeals' loan for a period of time beginning on March 1, 2008. (*See* James Decl. ¶ 7, ECF No. 49-2, PageID.1207.) As the loan servicer, CMI received and processed the Leeals' loan payments and corresponded with the Leeals by phone and by letters regarding their loan. (*See id.* ¶¶ 10–11, PageID.1208.)

On April 1, 2014, Green Tree Servicing, LLC ("Green Tree") acquired the servicing rights for the loan from CMI. (*See* James Decl. ¶ 8, ECF No. 49-2, PageID.1207–1208.) Both CMI and Green Tree notified the Leeals that the servicing of the loan had been transferred to Green Tree. (*See* 3/17/14 CMI Service Transfer Letter, ECF No. 49-2, PageID.1218–1219; 3/21/14 Green Tree Service Transfer Letter, ECF No. 49-1, PageID.1183–1186.) On April 11, 2014, CMI also assigned the Mortgage to Green Tree (*see* Derrick Decl. ¶ 7, ECF No. 49-1,

PageID.1162), and CMI recorded this assignment of the Mortgage. (*See* Assignment of Mortgage, ECF No. 49-1, PageID.1188–1189.) The Leeals began making their loan payments to Green Tree in May 2014. (*See* Derrick Decl. ¶ 14, ECF No. 49-1, PageID.1163.) The Leeals also corresponded with Green Tree concerning the servicing of their loan. (*See, e.g.*, *id.* ¶¶ 9, 12, ECF No. 49-1, PageID.1162–1163; 6/1/15 Leeal Letter, ECF No. 49-1, PageID.1191; 6/5/15 Green Tree Letter, ECF No. 49-1, PageID.1193.)

## B

On May 7, 2015, the Leeals filed a declaratory-judgment action against CMI and ABN AMRO in the Oakland County Circuit Court (the "State-Court DJ Action"). (*See* State-Court DJ Action, ECF No. 5-6.) The Leeals alleged, among other things, that the Note was void, and they asked the state court to determine whether they had any continuing obligation to make payments to CMI or ABN AMRO under the Note or the Mortgage. (*See id.*)

Critically, at the time the Leeals filed the State-Court DJ Action, neither CMI nor ABN AMRO had any connection to the Leeals' loan or to the Mortgage. As explained above, the loan had been sold to Fannie Mae, and the Mortgage had been assigned to Green Tree. But the Leeals did not name either Fannie Mae or Green Tree as defendants in the State-Court DJ Action. Nor did the Leeals notify Fannie

Mae or Green Tree that they had filed the State-Court DJ Action. (*See, e.g.*, Proof of Service, ECF No. 5-7.)

**C**

With the State-Court DJ Action pending, Green Tree – which, again, was unaware of that action – continued to service the Leeals' loan. (*See* Derrick Decl. ¶ 14, ECF No. 49-1, PageID.1163.)  And the Leeals continued sending loan payments to Green Tree. (*See id.*)

In the summer of 2015, Green Tree decided to merge into Ditech.  Green Tree sent the Leeals a notice of the pending merger and name change on August 5, 2015. (*See* Notice of Ditech Merger, ECF No. 49-1, PageID.1195.)  On August 31, 2015, Green Tree merged into Ditech and started operating under Ditech's name. (*See* Derrick Decl. ¶ 13, ECF No. 49-1, PageID.1163.)  Thereafter, the Leeals made loan payments to Ditech. (*See* Derrick Decl. ¶ 14, ECF No. 49-1, PageID.1163.)

**D**

Unsurprisingly, neither CMI nor ABN AMRO ever appeared in the State-Court DJ Action.  They had no interest to protect in that action and thus no need or incentive to appear.

Because CMI and ABN AMRO failed to appear, the state court issued a default judgment against them on September 16, 2015 (the "State-Court Default Judgment"). (*See* State-Court Default Judgment, ECF No. 5-10.)  The State-Court

Default Judgment declared that the Note and Mortgage were "void" and that the Leeals had no obligation to repay the funds that they had borrowed. In its entirety, the State-Court Default Judgment provides as follows:

> Upon the failure of the Defendants Abn Amro Mortgage Group, Inc. and CitiMortgage, Inc., to answer, plead or otherwise defend this action and the Court having heard Plaintiff's Motion for Entry of Default Judgment, it is hereby ordered:
>
> IT IS HEREBY ORDERED that the Note dated November 16, 2007 and the Mortgage dated November 16, 2007 and recorded in Liber 39796, Page 368 with the Oakland County Register of Deeds which were entered into with Plaintiffs are void as Defendant Abn Amro Mortgage Group, Inc. ceased to exist as of the date of the execution of said mortgage and note and said Defendant was no longer authorized to transact business in Michigan as of September 21, 2007;
>
> IT IS FURTHER ORDERED that Defendant Abn Amro Mortgage Group, Inc. lacked legal capacity to enter into the note dated November 16, 2007 and the Mortgage dated November 16, 2007 and recorded in Liber 39796, Page 368 with the Oakland County Register of Deeds entered into with Plaintiffs;
>
> IT IS FURTHER ORDERED that there is no legal basis documented or otherwise which requires Plaintiff to make any payments to Defendants CitiMortgage, Inc. or Defendant Abn Amro Mortgage Group, Inc. relative to the Mortgage and/or note with Plaintiffs dated November 16, 2007 and the Mortgage of the same date and recorded in Liber 39796, Page 368 with the Oakland County Register of Deeds.
>
> IT IS SO ORDERED.

(*Id.*, PageID.293–294.)

**E**

On September 17, 2015, one day after entry of the State-Court Default Judgment, Ditech received the Leeals' last payment on their loan. (*See* Derrick Decl. ¶¶ 14–15, ECF No. 49-1, PageID.1163.) At that point, the Leeals still owed $299,980 in principal on the loan. (*See id.* ¶ 18, PageID.1164; 10/8/18 Payoff Quote, ECF No. 49-1, PageID.1203.) But they stopped making payments.

Ditech mailed the Leeals notices of default on November 27, 2015, and May 13, 2016. (*See* Notices of Default, ECF No. 49-1, PageID.1197–1201.) The Leeals still did not make any payments. So, on January 26, 2017, Ditech began foreclosure by advertisement proceedings on the Mortgage. (*See* Notice of Mortgage Foreclosure Sale, ECF No. 5-14, PageID.339.)

**F**

In response to the foreclosure proceedings, on February 23, 2017, the Leeals filed this action against Ditech in the Oakland County Circuit Court. (*See* Verified Compl., ECF No. 5-14.) The Leeals asked the state court to block Ditech from foreclosing on the Mortgage. They contended that Ditech had no right to foreclose even though (1) roughly $300,000 remained owing on their loan and (2) they had not made a payment on the loan in eighteen months. All of the Leeals' claims rest on their contention that Ditech could not foreclose because (1) the State-Court Default Judgment voided the Note, (2) the Mortgage thus no longer secured a valid

note, and (3) there can be no foreclosure on a mortgage that does not secure a valid note. (*See id.* ¶¶ 19–30, PageID.310–311.) As the Leeals' counsel has acknowledged, if the Court accepts their argument that Ditech may not foreclose, then they would be permitted keep their house *without ever repaying the roughly $300,000 that remains owing on their loan*. (*See* 9/14/17 Hr'g Tr. at 28–30, ECF No. 9, PageID.398–400.)

The same day that the Leeals filed their complaint, the Oakland County Circuit Court issued a temporary restraining order that prevented Ditech from foreclosing. (*See* TRO, ECF No. 1, PageID.10–11.)

Ditech removed the action to this Court on March 1, 2017. (*See* Notice of Removal, ECF No. 1, PageID.1–8.) Ditech filed a motion to dismiss on March 17, 2017. (*See* Mot. to Dismiss, ECF No. 3.) On September 15, 2017, the Court denied Ditech's motion, stayed the case, and directed Ditech to file a motion in the State-Court DJ Action seeking to set aside, vacate, or otherwise obtain relief from the State-Court Default Judgment. (*See* Order, ECF No. 8.) The Court instructed Ditech to file such a motion because the Court believed that the state court might reconsider its judgment when informed that the Leeals failed to name as defendants the then-owner of the loan and the then-servicer and holder of the Mortgage. (*See* 9/14/17 Hr'g Tr. at 53–57, ECF No. 9, PageID.423–427.)

Ditech then returned to state court and moved that court to vacate the State-Court Default Judgment. The state court did not reach the merits of Ditech's motion. Instead, it denied the motion on the ground that Ditech failed to seek relief from the State-Court Default Judgment in a timely manner. (*See* Notice of Entry of Order, ECF No. 10; 12/12/17 Hr'g Tr. at 38–39, ECF No. 12-1, PageID.486–487.)

The proceedings in this action then resumed. Ditech filed an answer to the Leeals' Complaint on May 21, 2018. (*See* Answer, ECF No. 17.) Ditech also brought a Counter-Complaint against the Leeals seeking a declaratory judgment that the State-Court Default Judgment was not binding on Ditech. (*See id.* ¶¶ 47–61, PageID.535–539.) Ditech brought additional counterclaims contending, in the alternative, that Ditech has an equitable mortgage on the Leeals' property and that the Leeals have been unjustly enriched. (*See id.* ¶¶ 62–83, PageID.539–544.)

## G

On October 31, 2018, Ditech filed a motion for summary judgment. (*See* Mot. for Summ. J., ECF No. 30.) Ditech primarily argued that the State-Court Default Judgment was not binding on Ditech through either *res judicata* or collateral estoppel. (*See id.*, PageID.676–683.) On August 9, 2019, the Court held a hearing on Ditech's motion. (*See* 8/9/19 Hr'g Tr., ECF No. 44.) The Court was not convinced that *res judicata* and collateral estoppel were the appropriate legal principles to apply to the case, and the Court denied Ditech's motion without

prejudice. (*See id.* at 29, 43–44, 55, PageID.1089, 1103–1104, 1115; Order, ECF No. 41.)

At the Court's invitation, Ditech has now filed a renewed motion for summary judgment. (*See* Renewed Mot. for Summ. J., ECF No. 49.) Ditech's current motion argues that the State-Court Default Judgment is not binding upon, and did not determine any rights of, either Ditech (the current servicer of the Leeals' loan) or Fannie Mae (the current owner of the Leeals' loan) because neither were parties to the State-Court DJ Action. Rather than focusing on principles of *res judicata* and collateral estoppel, the current motion focuses upon the scope of an *in personam* judgment like the State-Court Default Judgment.

Ditech requests "that this Court enter summary judgment in favor of Ditech on the Leeals' complaint, and on Count I of Ditech's counterclaim for declaratory judgment, finding that: (1) Ditech did not illegally foreclose or violate MCLA 600.3204; (2) the Default Judgment does not impair Ditech's right to foreclose; and (3) Ditech has a valid and enforceable interest in the note and mortgage entitling Ditech to foreclose." (*Id.*, PageID.1156.) Ditech also asks the Court "to award Ditech its attorneys' fees and costs under Section 9 of the mortgage, and to dissolve the temporary restraining order currently entered against it." (*Id.*, PageID.1156–1157.)

II

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

III

A

The Court agrees with Ditech that the State-Court Default Judgment does not bar Ditech from foreclosing on the Mortgage. As explained below, that judgment did not "void" Fannie Mae's ownership interest in the Note. Thus, contrary to the

Leeals' argument, the Mortgage continues to secure a viable note, and the judgment does not prevent Ditech from foreclosing on the Mortgage in the event of a default.

The State-Court Default Judgment did not affect Fannie Mae's interest in the Note because the judgment was entered in an *in personam* action to which Fannie Mae was not a party. An *in personam* action seeks "the determination of personal rights and obligations of defendants." *Int'l Typographical Union v. Macomb Cty.*, 11 N.W.2d 242, 247 (Mich. 1943). It is "brought against a person rather than property." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (quoting Black's Law Dictionary, at 36 (10th ed. 2014)). A judgment in an *in personam* action binds only the named parties and those in privity with the named parties. Indeed, "[i]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 38, 40 (1940). Any attempt to bind a non-party and non-privy to a judgment entered in an *in personam* action would raise serious due process concerns. *See Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 n.4 (1996) ("[A State] cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." (quotation omitted)).

An *in rem* action, in contrast to an *in personam* action, "is one taken directly against property." *City of Detroit v. 19675 Hasse*, 671 N.W.2d 150, 163 (Mich. Ct. App. 2003) (quoting Black's Law Dictionary, at 793 (6th ed. 1991)). Such an action "determin[es] the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property," or is "an action in which the named defendant is real or personal property." *Chevalier*, 803 F.3d at 802 (quoting Black's Law Dictionary, at 36 (10th ed. 2014)). "A judgment in rem binds all the world," not just the parties named in the action. *L.A. Young Spring & Wire Corp. v. Falls*, 292 N.W. 498, 503 (Mich. 1940).

Here, the State-Court DJ Action was an *in personam* action because the Leeals (1) sought a determination of their personal rights and obligations under the Note and the loan vis-à-vis the two named defendants – CMI and ABN AMRO – and (2) did not file suit against or in the name of real or personal property. *See Eisner v. Williams*, 298 N.W. 507, 510 (Mich. 1941) (an action "to try title or right to the debt" is "an action in personam"); *see also Williamson v. Falkenhagen*, 227 N.W. 429, 429 (Minn. 1929) ("The action against the securities company and its receiver is solely to set aside the transfer of the note and mortgage to that company; in effect, to determine that plaintiff and not that company is the owner of the debt evidenced by them. . . . [T]he action is clearly an action in personam."). Thus, the judgment

entered in that action – i.e., the State-Court Default Judgment – was an *in personam* judgment rather than an *in rem* judgment.

As an *in personam* judgment, the State-Court Default Judgment did not void or impair the rights of Fannie Mae (the owner of the Note) and/or Ditech (the servicer and holder of the Mortgage) because they were not named parties nor were they in privity with the named parties.[2] Stated another way, while the State-Court Default Judgment may have determined that the Note and the Mortgage were "void" as between the Leeals, on one hand, and ABN AMRO and CMI, on the other hand, that judgment did not void the Note or Mortgage as between the Leeals, Fannie Mae, and Ditech. And since the State-Court Default Judgment did not impair the rights of

---

[2] The Leeals have not established that Ditech or Fannie Mae were in privity with CMI or ABN AMRO with respect to the State-Court DJ Action. "In Michigan, [t]o be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Leaf v. Refn*, 742 F. App'x 917, 922 (6th Cir. 2018) (quotation omitted). In the State-Court DJ Action, CMI and ABN AMRO were not "representing" *any* "legal right" – much less the right that Ditech seeks to enforce through foreclosure – because CMI and ABN AMRO had no interest in the subject matter of the action; the Leeals had wrongly named those entities as parties and they did not even appear. Thus, ABN AMRO and CMI were not in privity with Fannie Mae and Ditech with respect to the State-Court DJ Action. At one point, the Leeals briefly argued that Ditech was in privity with CMI. (*See* Resp., ECF No. 35, PageID.792–793.) The Leeals' evidence of privity was (1) emails between Ditech and CMI employees about the loan (*see* CMI–Ditech Email Chain, ECF No. 35-16), and (2) a letter from CMI to the Michigan Department of Insurance and Financial Services informing it that Ditech's litigation department was reviewing Ditech's attempts to collect on the loan. (*See* 8/1/17 Letter, ECF No. 35-17.) These letters do not demonstrate that Ditech was "so identified in interest" with CMI during the State-Court DJ Action that CMI represented "the same legal right" that Ditech is asserting here. *Id.*

Fannie Mae and Ditech with respect to the Note and the Mortgage, the judgment did not preclude Ditech from foreclosing on the Mortgage when the Leeals stopped making payments on their loan.

The Court's conclusion is supported by two analogous Michigan Supreme Court quiet title cases cited by Ditech. (*See* Renewed Mot. for Summ. J., ECF No. 49, PageID.1148–1149.) First, in *Giegling v. Helmbold*, the court addressed the following question: "Could the [defendants'] claimed right of access, as an abutting property holder to a public street, be adjudicated as to them in a suit in which they were not parties?" 98 N.W.2d 536, 537 (Mich. 1959). No, the court concluded: "Every man is entitled to his day in court. And, on this record, the [defendants] have not had theirs." *Id.* The court explained that "[a] decree quieting title does not extinguish the property rights of persons not made parties to the action." *Id.* And the defendants were not barred by the doctrine of *res judicata*, because the doctrine "applies only when the issues *and the parties* or their privies in the prior litigation are identical." *Id.* (emphasis in original).

Second, in *Schweikart v. Stivala*, the court similarly concluded that a defendant was not bound by the plaintiff's prior quiet title decree because the defendant was not named in the quiet title suit. *See* 45 N.W.2d 26, 30 (Mich. 1950). "As to defendant herein, who was not a party to plaintiffs' suit to quiet title, the

decree of the court, which pertained only to those who were defendants or intervening defendants in that case, is of no persuasive or binding force." *Id.*

Here, as in *Giegling* and *Schweikart,* the State-Court Default Judgment did not limit or impair the rights of Fannie Mae and Ditech in the Note and the Mortgage because Fannie Mae and Ditech were not parties to the State-Court DJ Action. And the State-Court Default Judgment did not bar Ditech from foreclosing on the Mortgage when the Leeals stopped making payments on their loan.

**B**

The Leeals resist this conclusion on three grounds. (*See* Resp., ECF No. 51, PageID.1262–1267.) None persuade the Court to rule in their favor.

First, the Leeals highlight that they were never aware that Fannie Mae purchased their loan from ABN AMRO and thus they could not have known that they needed to name Fannie Mae as a party in the State-Court DJ Action. (*See id.*, PageID.1262–1264.) But whether or not the Leeals' knew that Fannie Mae owned their debt is irrelevant to whether the State-Court Default Judgment binds non-party Fannie Mae. Indeed, the Leeals have not cited any authority to support their contention that a non-party (like Fannie Mae) may be bound by an *in personam* judgment on the ground that the plaintiff's failure to sue the non-party was based upon an error or lack of knowledge. Rather, as explained above, only named parties

and their privies can be bound by an *in personam* judgment. *See Hansberry*, 311 U.S. at 40; *Richards*, 517 U.S. at 798.

Second, the Leeals insist that the Court cannot deviate from the State-Court Default Judgment. (*See* Resp., ECF No. 51, PageID.1264.) The Court agrees that it may not upset the state court's ruling. But that proposition does not help the Leeals. The Leeals lose here because the State-Court Default Judgment did not adjudicate the rights of Fannie Mae and Ditech. Thus, this Court does not disturb the State-Court Default Judgment in any way when it rules that Ditech and Fannie Mae are not bound by that judgment and that the judgment does not prevent Ditech from foreclosing on the Mortgage.

Third (and relatedly), the Leeals insist that Ditech may not foreclose because the State-Court Default Judgment extinguished the Note, and without a valid underlying note, there is no basis to foreclose on the Mortgage. (*See id.*) Again, however, the State-Court DJ Action only determined the rights of the named parties: CMI and ABN AMRO. The State-Court Default Judgment had no bearing on whether Fannie Mae or Ditech had a valid interest in the Note and Mortgage.

**C**

As noted above, the Court previously denied two dispositive motions by Ditech – a motion to dismiss and a motion for summary judgment. In denying the motion to dismiss, the Court suggested that if the state court did not vacate the State-

Court Default Judgment, then Ditech would lose here. (*See* 9/14/17 Hr'g Tr. at 57, ECF No. 9, PageID.427.) And in denying summary judgment, the Court suggested that it may be possible that the State-Court DJ Action had an impact on the rights of Fannie Mae and Ditech. (*See* 8/9/19 Hr'g Tr. at 43–44, ECF No. 44, PageID.1103–1104.)

The Court has carefully reconsidered its earlier positions concerning the effect of the State-Court Default Judgment and has concluded that its earlier inclinations were wrong. After reviewing the authorities cited above concerning the scope of *in personam* judgments, the Court has realized that the State-Court Default Judgment does not impair or limit the rights of Fannie Mae and Ditech. As Justice Frankfurter said, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

## IV

For the reasons explained above, the Court hereby **ORDERS** that:

- Ditech's Renewed Motion for Summary Judgment on all of the Leeals' claims is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**;

- Ditech's Renewed Motion for Summary Judgment on Count I of its counterclaim, seeking a declaratory judgment that the State-Court Default Judgment is not binding on Ditech, is **GRANTED**;

- The temporary restraining order against Ditech is **EXTINGUISHED**.[3]

- Ditech may proceed to foreclose on the Mortgage; and

- Ditech's request for attorneys' fees under the terms of the Mortgage is **DENIED WITHOUT PREJUDICE**. To the extent that Ditech wishes to recover such fees and costs, it may bring a stand-alone request that the Court will consider at a later date.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: March 5, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 5, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

---

[3] *See Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir. 2016) ("Because the summary judgment was a final order, its issuance immediately extinguished the state court's preliminary injunction.").